Daniel Buckett, Plaintiff-Appellant,

v.

Glenn Jante and Elsie Jante,
Defendants-Respondents,

State of Wisconsin Department of Transportation,
Defendant.

Court of Appeals

*No. 2008AP2166. Submitted on briefs February 25, 2009.
—Decided March 4, 2009.*

**2009 WI App 55**

(Also reported in 767 N.W.2d 376.)

805

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Christopher A. Geary* of *Hostak, Henzl & Bichler, S.C.* of Racine.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Peter J. Ludwig* of Burlington.

Before Brown, C.J., Anderson, P.J., and Neubauer, J.

¶ 1. BROWN, C.J. Daniel Buckett paid the property taxes on a portion of his neighbors' property for over twenty-five years, but neither he nor his neighbors, Glenn and Elsie Jante, knew it. It was not until the Wisconsin Department of Transportation condemned the parcel and paid the Jantes $63,000 that both parties found out. Buckett wanted to be paid back, so he sued, *inter alia,* for a portion of the condemnation sale price on the theory of unjust enrichment. The circuit court held that unjust enrichment was unavailable because the Jantes did not have "knowledge or appreciation" that Buckett was paying their taxes contemporaneous with Buckett's tax payments. The law is, however, that when the benefit conferred can be easily returned, like money for example, the benefited party need not have knowledge or appreciation of the gain at

808

the precise time it is conferred. Instead, the party asserting an unjust enrichment claim satisfies the knowledge or appreciation element by proving that the benefited party had knowledge of or appreciated the benefit at a time which provided the party a fair opportunity to choose whether to accept or reject that benefit. So, we disagree with the circuit court on the law. Because the parties dispute the amount of taxes each party paid, we reverse and remand with directions that the trial court determine the amount that the Jantes were unjustly enriched.

## BACKGROUND

¶ 2. In the late 1960's Racine county slightly relocated County Highway A. Before the relocation, the highway tracked between Buckett's and the Jantes' property, with all of Buckett's property to the south and all of the Jantes' property to the north. The new route dipped slightly north into the Jantes' property. This left about two acres of the Jantes' land on the south side of the highway, adjacent to Buckett's land. This two-acre parcel is the source of the dispute in this case.

¶ 3. From at least the 1970's on, Racine county thought that Buckett owned the parcel. Its records listed Buckett as the owner of this two-acre parcel, and it sent Buckett annual tax bills. Buckett has paid those taxes since at least 1981. Racine county also assigned a separate parcel identification number to the property at some point in the 1990's. This parcel identification number has been on Buckett's tax bills since 1994.

¶ 4. Glenn Jante, however, had purchased this parcel as part of a larger section of property from his mother's estate in 1991. He had farmed the property for his entire life, though after the road spliced the two-

809

acre parcel off, he stopped farming that part. The parties no longer dispute that the Jantes were the true owners of the parcel.

¶ 5. In 2005, the Wisconsin Department of Transportation sought to condemn and purchase the parcel through an eminent domain proceeding for another road construction project. Initially, the DOT looked at Racine county's records and thought Buckett owned the property. So, it offered to purchase the property from Buckett in May. But about two months later it rescinded the offer. After further title work, the DOT concluded that the Jantes actually owned the property. The county records, it said, were in error. Shortly thereafter, the DOT purchased the parcel from the Jantes for $63,000 in an eminent domain proceeding.

¶ 6. Sometime around 2005, Buckett approached Glenn Jante about the taxes he had paid on the parcel. They spoke on the phone and in person at one point, but they did not resolve the matter. When Buckett asked the Jantes to reimburse him for the taxes he paid on the parcel, the Jantes refused. It was during these discussions that the Jantes initially learned Buckett had been paying taxes on the parcel. The Jantes claimed that they also paid property taxes on the parcel because Racine county had always taxed them for the same number of acres: 84.38.

¶ 7. The Jantes refused to reimburse Buckett for back taxes and Buckett sued. The circuit court ruled for the Jantes on the parties' cross motions for summary judgment.[1] It held that Buckett had not provided sufficient facts to meet the elements of unjust enrichment. Buckett appeals, again maintaining that the Jantes

---

[1] Buckett also named the State of Wisconsin as a party to the original suit. The State moved for summary judgment to

were unjustly enriched because he had paid taxes on the parcel since 1981. We will provide additional facts as needed.

## DISCUSSION

### *Standard of Review*

¶ 8.   We review a motion for summary judgment de novo, applying the same standard as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). In summary judgment, the first step of our review requires us to examine the pleadings to determine if a claim for relief has been stated. *Id.* We construe complaints liberally and refuse to dismiss a complaint unless it is quite clear that under no facts the plaintiff could recover. *Farr v. Alternative Living Servs., Inc.*, 2002 WI App 88, ¶ 8, 253 Wis. 2d 790, 643 N.W.2d 841. If we determine a claim for relief has been stated, then under WIS. STAT. § 802.08(2) (2007–08),[2] we grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Green Spring Farms*, 136 Wis. 2d at 315.

¶ 9.   A circuit court's decision whether to grant or deny equitable relief in an action for unjust enrichment

---

dismiss itself as a party to the lawsuit. The circuit court granted the State's motion. Buckett does not appeal this part of the circuit court's decision.

[2] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

is discretionary. *Ulrich v. Zemke*, 2002 WI App 246, ¶ 8, 258 Wis. 2d 180, 654 N.W.2d 458. We affirm discretionary decisions only if the circuit court examined the relevant facts, applied the proper law, and using a rational process, reached a conclusion that a reasonable judge could reach. *Id.* Whether the circuit court applied the proper law is a question of law we review de novo. *Id.*

### *Failure to State a Claim*

¶ 10.   We begin with an examination of the pleadings to determine whether Buckett stated a claim for relief. To establish a claim for unjust enrichment, the plaintiff must prove three elements:   (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant had an appreciation or knowledge of the benefit; and (3) the defendant accepted or retained the benefit under circumstances making it inequitable for the defendant to retain the benefit without payment of its value. *S & M Rotogravure Serv., Inc. v. Baer*, 77 Wis. 2d 454, 460, 252 N.W.2d 913 (1977). The circuit court ruled that Buckett could not prove his tax payments conferred a benefit on the Jantes to satisfy elements one and three, or that the Jantes had knowledge of the tax payments sufficient to satisfy element two. We will begin with the benefit required by the first and third elements, and then discuss the second element.

### *1. Elements One and Three (Conferring a Benefit and Acceptance and Retention of the Benefit)*

¶ 11.   The first reason why the circuit court granted summary judgment for the Jantes is because, in its opinion, "nothing in [the final] complaint . . .

describes the property that the state ultimately bought." The circuit court concluded that Buckett included the wrong legal description in his second amended complaint (the final complaint). And the DOT never purchased the parcel in this description, so Buckett's tax payments did not confer a benefit on the Jantes. Therefore, it ruled that Buckett failed to state a claim.

¶ 12. Neither party disputes that Buckett provided the wrong legal description in his final complaint.[3] Regardless, though, Buckett did correctly describe the parcel by address, in a narrative form, and by reference to the parcel identification number that Racine county assigned. Further, the Jantes, in their answer, admitted that the property described by Buckett in his final complaint was what the 1960's reconstruction of County Highway A created and the DOT purchased in 2005 for $63,000. This information is sufficient to state a claim for relief. *See Farr*, 253 Wis. 2d 790, ¶ 8.

### 2. *Element Two (Appreciation and Knowledge of the Benefit)*

¶ 13. The circuit court also granted summary judgment because Buckett could not prove that the Jantes appreciated or knew about Buckett's tax payments contemporaneous with Buckett's actual payment. The Jantes and the circuit court believed that element two comes with a bright-line rule that when the benefited party receives a benefit but is "unaware of that benefit until after it had been done, [it] was not unjust for [the

---

[3] According to Buckett, the legal description in his second amended complaint came from an early DOT offer. After the DOT concluded that the Jantes owned the parcel, the DOT switched its legal description to that on the Jantes recorded deed. And after the DOT purchased the property they used yet another legal description.

benefited party] to keep the [benefit]."[4] Since the Jantes did not have knowledge of the benefit at the precise time that Buckett conferred the benefit, the circuit court held that Buckett could not prove element two.

¶ 14. We agree that Buckett cannot prove the Jantes had knowledge or appreciation of Buckett's tax payments at the precise time he made them. But, element two does not state that the benefit must be contemporaneous with the knowledge or appreciation. Instead, element two of an unjust enrichment claim is "an appreciation or knowledge by the defendant of the benefit." *S & M Rotogravure Serv., Inc.*, 77 Wis. 2d at 460. We have found no Wisconsin law creating a bright-line rule requiring contemporaneous knowledge or appreciation,[5] and the plain meaning of knowledge or

---

[4] The circuit court offered the following example of when the knowledge or appreciation must be contemporaneous with the conferral of the benefit:

> The lawn care service came and spread fertilizer on my property, stuck the bill in the door, but I had never ordered from them the fertilizer. It was intended for my neighbor. In fact, the bill they stuck in my door was for one of the neighbors, so I called them and said I never ordered this, and they indicated that I wouldn't have to pay for it and enjoy my lush green lawn for the summer. Now, I got a benefit, but I was unaware of that benefit until after it had been done, and therefore [it] was not unjust for me to keep the fertilizer on my grass.
>
> If, on the other hand, I had been home when [the lawn care service] pulled up in their truck and the guy jumps out with his sprayer and starts spraying and I say nothing, knowing that I have not ordered this service, then [the lawn care service] could pursue me to recover for unjust enrichment when I knew I was getting something that I was not entitled to and stood by and did nothing.

[5] *Industrial Credit Co. v. Inland G.M. Diesel, Inc.*, 51 Wis. 2d 520, 187 N.W.2d 157 (1971), suggested, but did not ultimately conclude whether the second requirement is not just appreciation or knowledge, but knowledge or appreciation of

appreciation provides little guidance. Therefore, we look to the case law to see if we can divine the meaning.

¶ 15.    Our review of Wisconsin case law reveals that *Nelson v. Preston*, 262 Wis. 547, 55 N.W.2d 918 (1952), is the first case which explicitly stated that knowledge or appreciation is an element of unjust enrichment. The *Nelson* court wrote that:

> [T]he essential elements of quasi contract entitling one to judgment for unjust enrichment are:
>
>     1. A benefit conferred upon the defendant by the plaintiff;
>
>     2. Appreciation by the defendant of the fact of such benefit; .
>
>     3. Acceptance and retention by the defendant of such benefit, under circumstances such that it would be inequitable to retain the benefit without payment of the value thereof.

*Id.* at 550.

■

¶ 16.    *Nelson* cited *Dunnebacke Co. v. Pittman*, 216 Wis. 305, 257 N.W. 30 (1934), for these three require-ments. But, *Dunnebacke* listed only the first and third elements, not the second. *Dunnebacke*, 216 Wis. at 311. It stated that the elements the plaintiff must prove are "(1) that the defendant has received a benefit from the plaintiff, [and] (2) that the retention of the benefit by the defendant is inequitable." *Id.* (citation omitted). However, *Dunnebacke* denied recovery because the plaintiff improved the defendants' property without their knowledge, the defendants wanted the improve-

the benefit "*contemporaneous* with the performance of the services that confer the benefit." *Id.* at 526 (emphasis added).

815

ment removed, and they never showed any intent to retain the improvement. *Id.* at 312. The *Dunnebacke* court explained that "[h]ad the [defendants] been present during the time that the construction work was going on, and had they made no protest, we should have a different situation with which to deal." *Id.* Thus the essence of the knowledge or appreciation requirement is to provide the defendant an opportunity to protest or reject the benefit.

¶ 17. The *Dunnebacke* court also explained that the choice need not happen contemporaneously with the conferral of the benefit. If the benefited party does not have contemporaneous knowledge, the plaintiff may still be able to establish a factual basis for recovery if subsequent conduct evinces an attempt to accept the benefits. *Id.* Appreciation or knowledge of the benefit conferred therefore requires that the benefited party have a fair opportunity to accept or reject the benefit when he or she learns of or appreciates the benefit. It does not require that the timing of the choice coincide with the precise time the benefit is conferred if the nature of the benefit is such that it can subsequently be returned.

¶ 18. As it happens, the available literature considers mistakenly paying someone else's taxes to be a prime example of a factual basis where the benefited party can return the benefit well after it is conferred. The fungible nature of a tax payment means that the benefited party can easily return the benefit at any time because, upon learning of the payment later on, the benefited party can simply repay the plaintiff or the plaintiff can place a lien on the benefited party's property in the amount of the tax payment. *See Central Wis. Trust Co. v. Swenson*, 222 Wis. 331, 337, 267 N.W. 307

(1936).[6] In *Central Wisconsin Trust Co.*, 222 Wis. at 334, our supreme court explained how unjust enrichment applies in tax cases by citing the RESTATEMENT. The court stated:

> The case in our opinion clearly falls within section 38 (1) of the American Law Institute's "Restatement of Restitution and Unjust Enrichment" (Tent. Draft No. 1), which reads:
>
> "§ 38. *Performance of another's duty or discharge of lien against another's property.* (1) A person who, by payment to a third person, has discharged the duty of another or has released another's property from an adverse interest, doing so unintentionally or acting because of an erroneous belief induced by a mistake of fact that he [or she] is thereby discharging a duty of his [or her] own or releasing property of his [or her] own from a lien, is entitled to restitution from such other of the value of the benefit conferred up to the value of what is given, unless the other disclaims the transaction."

*Id.*

---

[6] In *Central Wisconsin Trust Co. v. Swenson*, 222 Wis. 331, 333, 267 N.W. 307 (1936), the plaintiff sued under unjust enrichment to recover property taxes it mistakenly paid on the wrong parcel. The defendant owned both parcels A and B. *Id.* The plaintiff had a mortgage secured by parcel A. *Id.* Taxes on parcel A were delinquent. *Id.* The plaintiff paid the delinquent taxes to protect its security interest, except it mistakenly paid the delinquent taxes on parcel B instead. *Id.* The court held that the plaintiff released the defendant's property from an adverse interest because of their mistake of fact, and that the defendant landowner is "presumed to have wished and intended to pay [taxes] to protect the land from sale and the issuance of a tax deed thereon." *Id.* at 334. Therefore, unless the landowner rebuts that presumption, he or she has been unjustly enriched. *Id.* at 334–35. The court held that the plaintiff could file a lien on parcel B for the amount of taxes mistakenly paid. *Id.* at 337.

¶ 19. The RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 7(1) (Tentative Draft No. 1, 2001) similarly explains that "[r]estitution for the mistaken performance of another's obligation is readily available where the performance consists of payment of a money debt. If liability in restitution merely substitutes one creditor for another, the restitution defendant is not substantially prejudiced by the claimant's mistaken intervention . . . ." The RESTATEMENT continues, explaining that "[m]istaken payment of another's debt may have the effect of discharging a lien on the other's property, in which case the payor may seek to be subrogated to the discharged lien. The standard example involves mistaken payment of taxes on another's property." *Id.*, § 7(1) cmt. a.

¶ 20. Both the RESTATEMENT and *Central Wisconsin Trust Co.* provide illustrations directly on point. Illustration one of the RESTATEMENT states: "[b]y a mistake of the tax authority, and unknown to either taxpayer, A's real property is assessed for improvements located on the property of B. A pays the tax bill in the belief that the property has been correctly assessed. A has a claim in restitution against B to recover taxes paid in respect of B's property." *Id.*, § 7(1) cmt. a, illus. 1; *see also id.* § 19 cmt. e, illus. 9. Similarly, the *Central Wisconsin Trust Co.* cited foreign jurisdictions that applied unjust enrichment in cases involving the payment of taxes on land through mistake: when one pays taxes on land in mistaken belief of ownership or in mistaken belief that he or she is paying them on his or her own land when he or she is in fact paying them on the land of another, that person is entitled to recover from the true owner. *Central Wis. Trust Co.*, 222 Wis. at 335–36.

¶ 21. We thus conclude that when a party mistakenly confers a monetary benefit, or other easily returnable benefit, on another, that party is entitled to restitution from the benefited party who, upon learning of the mistaken payment, refuses to repay the money. Buckett's claim that his inadvertent tax payments unjustly enriched the Jantes is therefore viable. Buckett had demanded repayment from the Jantes, giving them knowledge of the benefit, and which demand the Jantes refused. Therefore, unless there has been a double payment of taxes, an issue we will get to in a moment, the Jantes have accepted, retained and appreciated the tax payments, and the retention of those benefits without payment to Buckett is inequitable. Buckett sufficiently pled a claim of unjust enrichment.

### Genuine Issue of Material Fact

¶ 22. The next step in our summary judgment review is to determine whether any genuine issue of material fact exists which would preclude summary judgment. *Gouger v. Hardtke*, 167 Wis. 2d 504, 516, 482 N.W.2d 84 (1992). Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). To defeat the summary judgment motion, the opposing party must submit by affidavit or other proof facts sufficient to "be substantial and raise questions of fact," even if such evidence would be insufficient proof at trial. *Gouger*, 167 Wis. 2d at 520.

¶ 23. The Jantes raise two factual issues related to the amount they actually benefited from Buckett's

819

payments. First, they claim that Racine county actually double taxed the parcel because they also paid taxes on it. Second, they claim that, even if the parcel was not double taxed, the amount that Buckett paid in taxes is more than their actual benefit because Racine county overtaxed Buckett.

### 1. Double Taxation

■

¶ 24.   The Jantes first dispute whether they received any benefit at all from Buckett's tax payments because Racine county may have billed both parties for property tax on the parcel. Glenn Jante stated in his affidavit that the parcel he purchased in 1991 from his mother's estate "contained approximately 84.38 acres at all times pertinent to this case, both before and after 1981, [and] includes that portion . . . which plaintiff claims to have paid real estate taxes for during the period in question." He continued, attesting that "during all periods in question, we too, were paying real estate taxes for the parcel in question. Our real estate taxes, or the taxes of our parents, were never adjusted before, on, or after the 1981 tax statement."[7] Because

---

[7] As proof of double taxation, the Jantes submitted receipts from tax years 1994 through 1997, 1999, 2001, and 2005. Each tax bill shows the acreage as 84.38, except for the 1999 year, which does not list an acreage amount. The Jantes assert that they did not submit to the court any earlier tax receipts because at Buckett's deposition he stated that 1994 was the first year he thought he had paid taxes on the parcel. They state that they did not learn Buckett claimed he paid taxes since 1981 until his affidavit in support of summary judgment. And, they aver, at that point they did not have an opportunity to obtain additional, historic tax records. Beyond that, it is unclear whether the 84.38 acres included the disputed parcel, or not. These are

the circuit court had decided that there was no viable claim for unjust enrichment, it never got to the question of whether there were genuine material facts in dispute regarding this double taxation issue.

¶ 25. This is a genuine issue of material fact because if Racine county did double tax the parcel, the benefited party would be the county. And more importantly, if that is the case, then Buckett's tax payments did not save the Jantes from also paying taxes. So, the Jantes would not have received a benefit from Buckett. *See Ludyjan v. Continental Cas. Co.*, 2008 WI App 41, ¶ 8, 308 Wis. 2d 398, 747 N.W.2d 745 ("unjust enrichment focuses on the unjust gain *to the defendant*"). Instead, Buckett's claim in restitution would be against the county. *See* RESTATEMENT (THIRD) OF RESTITUTION § 19 cmt. e, illus. 8. (2001); *compare id.*, illus. 9. We must remand to the circuit court so that this factual dispute can be tried.

### 2. Improper Tax Assessment

¶ 26. Still to be determined is the length and breadth of our remand. The Jantes claim that there is another genuine issue of material fact to resolve even if no double taxation occurred. The Jantes believe that Racine county assessed the land too high. They contend that Racine county taxed the land as though it were buildable land rather than unimproved land upon which one cannot build. Therefore, they claim too much in taxes was paid, taxes which they should not be responsible for paying.

¶ 27. The theory behind the Jantes' argument is this: The tax bill Racine county sent Buckett for the

exactly the sort of mistakes and disputes that should be resolved at the trial court level.

parcel included assessments for land and improvements. But that parcel *did not have* any improvements. The adjacent land, the land that Buckett owns and correctly paid taxes on, *did have* improvements. But instead of taxing Buckett for those improvements on *that* tax bill, Racine county screwed up and put those improvements on the Jantes' parcel instead. And, if Racine county put improvements on the parcel, then it must have thought the parcel was buildable. Consequently, since Racine county thought the parcel was buildable, then it must have assessed the land higher than its actual value because "[a] parcel never has as much value if a purchaser cannot build a structure on it." Therefore, the taxes Buckett paid which are attributable to the land "bear no relation to [what] the tax would have been on the actual, vacant, non-buildable parcel." Bottom line, the Jantes believe that the parcel could "[h]ypothetically . . . have virtually no value."

¶ 28.  The Jantes then allege that because it is undisputed that the assessment was wrong in that it included improvements that were not there, and because it included improvements that were Buckett's responsibility to pay, the Jantes claim that Buckett must prove the following question to establish the benefit they received:  "[W]hat should the assessment value for this thin, road-side, non-buildable parcel be?" In other words, to prove damages, the Jantes claim that Buckett must prove the amount that Racine county would have taxed the parcel had it correctly assessed the property. And, therefore, the Jantes presume that "[Buckett] can't prove damages because we don't have the faintest idea what this land would have been assessed and therefore taxed at."

¶ 29.   The problem with the Jantes' theory is that it is all theory. It is all allegation, speculation, and conjecture. Yes, there is proof in the record that the tax bill included a tax for improvements, but there is absolutely no proof in the record that Racine county taxed the land as if it were "buildable" land. This is an appeal from both a grant of summary judgment in favor of the Jantes and a denial of summary judgment to Buckett. Part of the Jantes' job was to produce *facts* to defeat Buckett's motion for summary judgment. A party against whom a motion for summary judgment has been brought cannot rest upon the pleadings but must set forth specific evidentiary facts that are admissible in evidence showing that there is a genuine issue for trial. WIS. STAT. § 802.08(3); *Moulas v. PBC Prods. Inc.*, 213 Wis. 2d 406, 410, 570 N.W.2d 739 (Ct. App. 1997), *aff'd,* 217 Wis. 2d 449, 576 N.W.2d 929 (1998).

¶ 30.   Here, Buckett provided facts showing that he paid the taxes. He knew that the tax bill added improvements that were not there and so his claim is just for the taxes he paid on the land itself. This evidence is taken as true if not contradicted by opposing affidavits or proof. The Jantes' theory of over-taxation was a challenge to Buckett's summary judgment motion. If the Jantes were to defeat summary judgment using this theory, they would have had to bring facts to the circuit court's attention that the taxes Buckett paid were based on an over-evaluation of the land's worth. They failed to do so. *See Moulas*, 213 Wis. 2d at 410–11 (once a motion for summary judgment is made and properly supported, the opposing party must advance specific facts showing the presence of a genuine issue for trial, and does not have the luxury of resting upon its mere allegations or denials of the pleadings).

¶ 31. There is no such proof. There is no affidavit or deposition from Racine county admitting that it assessed the land as if there were improvements on the property. There is no affidavit or deposition from someone claiming expertise in the field who could state something similar. There is nothing except the theory that the land value *must have been* increased simply because the county thought the land had improvements. This theory was included in the summary judgment record in the form of Glenn Jante's affidavit, which stated that he did "not believe it was a buildable parcel, given that setbacks could not have been met," and the allegations in his brief in support of his motion for summary judgment. These will not suffice to defeat Buckett's motion for summary judgment.

¶ 32. Hence, only the double taxation issue—where the Jantes *did* present sufficient evidence to defeat Buckett's summary judgment motion—is available as the Jantes' defense to Buckett's claim. At bottom, what we have here is essentially a claim that the Jantes are "free riders," to use the law and economics term, and that they rode at Buckett's expense. Whether the Jantes are free riders depends on how the double taxation issue comes out. Summary judgment is thus precluded, and we remand with instructions that the trial court determine if Racine county double taxed the parcel.

*By the Court.*—Order reversed and cause remanded with directions.